NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LLOYD B., TINA M., *Appellants,*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, L.B., *Appellees.*

No. 1 CA-JV 14-0022
FILED 06-03-2014

Appeal from the Juvenile court in Maricopa County
No. JD22289
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant Lloyd B.*

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Tina M.*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Arizona Department of Economic Security*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1             This is an appeal from a juvenile court's order granting the State's motion to terminate parental rights.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2             L.B. was born in July 2010; his parents are Lloyd B. ("Father") and Tina M. ("Mother").[1]   In June 2012, the Arizona Department of Economic Security ("ADES") received a report alleging that (1) Father was increasingly violent towards Mother in L.B.'s presence; (2) Father and Mother's residence had dog feces on the floor and was so cluttered that only a small path permitted movement through the home; (3) L.B. was left in his high chair or playpen for hours at a time because he could not be safely placed on the ground; (4) Father and Mother allowed L.B. to remain in his own feces for extended periods of time, resulting in a rash; (5) Father refused to give L.B. food or water for hours at a time; (6) both parents were unemployed; and (7) Father and Mother had not obtained services to address L.B.'s special needs due to his premature birth.

¶3             After an investigation, ADES offered the parents in-home family preservation services.  ADES authorized childcare for L.B. and urged Father and Mother to remedy the home's condition.  Nevertheless, Father and Mother did not consistently take L.B. to daycare, made only minimal improvements to the home's condition, and failed to participate in the offered family preservation program.

---

[1]     Father testified that he learned from Mother in November 2013 that he may not be L.B.'s biological father, but he agrees that he is L.B.'s legal father.

¶4 In mid-July 2012, Father and Mother both tested positive for methamphetamine, and ADES thereafter implemented a safety plan requiring that Mother and L.B. live with Mother's relatives. Mother violated the plan, however, when she left her relatives' home and could not be located when L.B. needed medical attention.

¶5 ADES took custody of L.B. in late July 2012, three days after L.B.'s second birthday. ADES placed L.B. with a maternal relative, who has provided care since then and has expressed an interest in adopting him.

¶6 On July 31, 2012, ADES filed a dependency petition alleging neglect due to Mother and Father's substance abuse, domestic violence, failure to obtain needed medical services, and failure to provide a safe living environment. After Mother contested the dependency allegations, the court found L.B. dependent as to both parents and established a case plan of family reunification, with a concurrent case plan of severance and adoption.

¶7 Father, a military veteran, has a long history of abusing alcohol, marijuana, and methamphetamine. Father used methamphetamine sporadically starting in 1986, and began using daily with Mother starting in May or June 2012. Father acknowledged that when he uses drugs, he is unable to appropriately care for L.B., and Father admitted that he had consumed alcohol and methamphetamine while L.B. lived with him.

¶8 ADES offered Father the following reunification services: substance abuse assessment and treatment, drug testing, parent-aide assistance, and supervised visitation. ADES also recommended that Father self-refer for mental health services through the Veterans' Administration ("VA") or Magellan Health Services.

¶9 Father was scheduled for 57 random drug screens from late July 2012 through October 2013, but he did not submit any valid urine samples to the Treatment Assessment Screening Center ("TASC"). Although Father testified that he has urinary tract and prostate problems that prevented him from urinating while being monitored, he did not provide medical support for this claim.

¶10 In late October 2012, Father completed an intake assessment at TERROS Treatment Center. Although Father denied drug use, he tested positive for methamphetamine at the time of the intake assessment, as well as in January and February 2013. Father did not consistently

3

participate in TERROS's substance abuse treatment program, which resulted in TERROS discontinuing services.

¶11        Father went to Magellan Health Services in June 2013, but he did not qualify for services. Father completed an intake assessment with Maverick House, a substance abuse treatment center, which recommended him for outpatient treatment. In late August, Father completed a 72-hour outpatient program, but he quit the recommended aftercare program after two weeks. Father claimed that he began attending Alcoholics Anonymous ("AA") meetings in April 2013.

¶12        In mid-January 2013, Father began participating in parent-aide services, but he did not consistently spend time with L.B. During the dependency proceedings, Father changed residences multiple times, and at the time of the severance hearing, Father was living in temporary housing that he acknowledged would not be an appropriate residence for L.B. Father also testified that he suffered a stroke in 2011, and since then has not had stable employment. At the time of the severance hearing, he was attempting to secure employment at Luke Air Force Base.

¶13        Mother has a history of alcohol, marijuana, and methamphetamine use. She began using methamphetamine in 2011, with her use peaking in 2012.

¶14        ADES referred Mother for psychological consultation and offered her the following reunification services: substance abuse assessment and treatment, drug testing, parent-aide assistance, and supervised visitation.

¶15        Although Mother knew that ADES wanted her to submit to urinalysis testing at TASC, she did not consistently comply with required drug testing until approximately June 2013. From July 2012 through October 2013, Mother missed 80 of 187 random urinalysis tests. Mother tested positive for methamphetamine twice in January 2013.

¶16        In August 2012, Mother completed an intake assessment with TERROS. But she participated in less than half of the required counseling sessions from August through December 2012, and she tested positive for methamphetamine in October 2012. In November 2012, Mother had "regressed to the early stages of change." She admitted that she only went to outpatient meetings sporadically because she was using methamphetamine and chose not to participate in outpatient treatment.

¶17 In February 2013, Mother went to an inpatient treatment facility at Maverick House and participated in a 12-step program. She lived at the Maverick House facility for 28 days and tested negative for drugs during that time. ADES referred her to an aftercare program at a recovery facility, Sunlight of the Spirit, but she left after two weeks to be with Father. Mother was asked to leave the aftercare program after she tested positive for methamphetamine in March 2013. In March 2013, TERROS closed out services to Mother due to her inadequate efforts.

¶18 In April 2013, Mother reengaged with TERROS, which referred her for standard outpatient treatment with the National Council on Alcoholism and Drug Dependency ("NCADD").

¶19 In mid-May 2013, Mother completed an intake assessment with NCADD, testing positive for methamphetamine. But Mother only attended one of four scheduled treatment classes.

¶20 In June 2013, Mother moved to Sojourner Center, a domestic violence shelter, after reporting that Father had assaulted her. Mother missed all four of her treatment classes that month at NCADD, and she missed two TASC urinalysis tests.

¶21 In June 2013, ADES filed a Motion for Termination of Parent-Child Relationship on the grounds of substance abuse and six months' time in care, and later amended the petition to also include nine and 15 months' time in care.[2] In July, Mother missed one out of four NCADD

---

[2] The six months' time-in-care ground allows termination of parental rights if a "child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances" leading to the out-of-home placement. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(b). The nine months' time-in-care ground mirrors the six months' standard for termination, but is applicable to children of any age. A.R.S. § 8-533(B)(8)(a). The fifteen months' time-in-care ground allows severance based on an out-of-home placement of 15 months or longer if "the parent has been unable to remedy the circumstances" that caused the out-of-home placement and "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

classes.  In August, she missed another class and another drug test.  In late August 2013, Sojourner Center asked Mother to leave because she had missed required meetings.  She was homeless for a couple of weeks before moving into Crossroads Halfway House in late September 2013.[3]  That month, she ended her relationship with Father.

**¶22**      After a three-day evidentiary hearing, the court found severance to be in the best interests of the child and terminated Father's and Mother's parental rights to L.B. based on substance abuse, nine months' time in care, and 15 months' time in care.

**¶23**      Father and Mother timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 8-235(A).

## DISCUSSION

**¶24**      Father and Mother argue that there was insufficient evidence to support severing their parental rights based on substance abuse, nine months' time in care, and 15 months' time in care.  Father also argues that the juvenile court erred by finding that ADES made reasonable efforts to provide him appropriate reunification services and that severance of Father's parental rights was in L.B.'s best interests.

## I.      Applicable Legal Standards.

**¶25**      The juvenile court may terminate the parent–child relationship only if clear and convincing evidence establishes at least one statutory ground for severance.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); *see also* A.R.S. § 8-533(B).  The court must also find that a preponderance of the evidence establishes that severance is in the child's best interests.  *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018; *see also* A.R.S. § 8-533(B).  We review the juvenile court's severance order for an abuse of discretion, viewing the evidence in the light most favorable to sustaining the court's findings and accepting the court's factual findings unless clearly erroneous.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2, 181 P.3d 1126, 1128 (App. 2008).  We similarly defer to the juvenile court's credibility assessments.

---

[3]      Mother signed a commitment contract on September 24, 2013 to stay at Crossroads for the next 126 days.

*Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002).

¶26　　　　The statutory ground for severance due to substance abuse requires proof "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Severance under § 8-533(B)(3) also requires a showing that ADES provided the parent with adequate reunification services. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 19, 219 P.3d 296, 303 (App. 2009).Drug use does not need to be constant to be considered chronic drug abuse. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16, 231 P.3d 377, 381 (App. 2010). Parental responsibilities under § 8-533(B)(3) include providing a child with "food, shelter, and medical attention," as well as with good physical care, emotional security, guidance, and control. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 19, 210 P.3d 1263, 1268 (App. 2009).

## II.　Reasonable Evidence Supports the Juvenile Court's Findings Regarding Statutory Grounds for Severance.

¶27　　　　Father argues the juvenile court erred by finding that he would not be capable of exercising proper and effective parental care and control in the near future due to substance abuse. But a parent's failure to remedy his or her substance abuse, knowing that the loss of his or her child is imminent, is evidence that the parent has not overcome dependency on drugs and alcohol. *Raymond F.*, 224 Ariz. at 379, ¶ 29, 231 P.3d at 383. In considering whether a parent's substance abuse will continue for a prolonged indeterminate period, courts consider the parent's treatment history "to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." *Id.* at 378, ¶ 25, 231 P.3d at 382 (citation omitted). If the parent has been unable to sustain sobriety in a noncustodial setting, "there is little hope of success in parenting." *Id.* (citation omitted).

¶28　　　　Here, Father refused to participate in required urinalysis testing through TASC following L.B.'s removal. Father alleged that a medical condition affected his ability to comply with urinalysis testing, but he did not provide any evidence documenting his alleged medical condition. Moreover, he acknowledged that he was able to provide a urine sample for a new employer a week prior to the severance hearing.

7

¶29 Father's participation with substance abuse treatment was inconsistent. TERROS services were eventually closed due to Father's lack of attendance, and he tested positive for methamphetamine in October 2012, January 2013, and twice in February 2013. Although Father completed a 72-hour treatment program in late August, his successful completion does not demonstrate sobriety because the program did not require drug testing. And Father stopped attending an aftercare program after only two weeks. Although Father testified that he had been attending an AA 12-step program, he could not recall the steps of the program, despite alleging that he was on Step 10.

¶30 Although Father testified that he last used methamphetamine in April 2013, he did not comply with a drug testing program that could have supported his assertion, and he did not otherwise show that he was drug free. Accordingly, the record supports the juvenile court's finding that Father would be unable to discharge his parental responsibilities because of substance abuse, and that there were reasonable grounds to believe that Father's substance abuse would continue for a prolonged and indeterminate period.

¶31 Father also contends that ADES did not make diligent efforts to provide appropriate reunification services under § 8-533(B)(3). Specifically, he argues that ADES failed to offer services to treat domestic violence and post-traumatic stress disorder. But the record reflects that Father waited until May 2013 to self-refer for VA mental health services, and he did not inform ADES about an alleged two-year waiting list to be seen by VA mental health specialists. Accordingly, the juvenile court did not abuse its discretion by concluding that ADES provided appropriate reunification services.

¶32 Mother argues that the State failed to present sufficient evidence to prove that she was unable to discharge her parental responsibilities due to substance abuse. She asserts that she stopped using drugs at the end of May 2013 and was successfully participating in substance abuse treatment through NCADD and Crossroads at the time of the severance hearing.

¶33 The record reflects, however, that Mother has not demonstrated an ability to remain sober when not in an inpatient setting. Mother did not consistently submit to urinalysis testing until approximately mid-June 2013, and she missed 80 out of 187 required random drug tests from July 2012 through October 2013. She tested positive for methamphetamine twice in January 2013.

**¶34** After L.B.'s removal, Mother moved from one treatment center to another without successfully completing a treatment program. She participated in less than half of the TERROS sessions from August 2012 through December 2012. Although she tested negative for methamphetamine use while living at the Maverick House in February 2013, she was asked to leave a subsequent aftercare program after a positive test in March 2013. TERROS discontinued services due to Mother's inadequate participation.

**¶35** Mother reengaged services at TERROS in April 2013, and began participating in NCADD programs in mid May. At intake with NCADD, however, she tested positive for methamphetamine use and missed three out of four classes. In June 2013, she moved into a domestic violence shelter and continued to sporadically attend NCADD classes through September 2013. In late August 2013, the domestic violence shelter asked her to leave because she had missed required meetings.

**¶36** Mother testified at the severance hearing that she had not been successful at prior treatment centers because she had not realized at that time that her life had become so unmanageable. She admitted not being willing to make a change until September 2013, and that she had just started to make changes 15 months after L.B. was removed from her care.

**¶37** Notwithstanding Mother's recent efforts to treat her drug problem, the record supports the juvenile court's finding that Mother had been unable to discharge her parental responsibilities because of drug use and that there were reasonable grounds to believe Mother's chronic substance abuse would continue for a prolonged and indeterminate period of time.

**¶38** Substantial evidence supports the juvenile court's finding that severance of Father's and Mother's parental rights to L.B. was warranted based on substance abuse under A.R.S. § 8-533(B)(3), and because it is undisputed that L.B. had been in a court-ordered placement for 15 months or longer, the evidence also supports the juvenile court's findings under § 8-533(B)(8)(c). Having upheld these grounds for severance, we need not address any additional grounds found by the juvenile court. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27, 995 P.2d 682, 687 (2000).

### III. Reasonable Evidence Supports the Juvenile Court's Finding that Severance Is in L.B.'s Best Interests.

¶39       Father argues that the juvenile court's best interests finding is not supported by the evidence. He alleges that L.B. is unhappy at his foster placement, the foster parents are spanking and abusing L.B., and L.B.'s needs are not being met. Father also argues that he has learned appropriate parenting skills and should be given more time to obtain necessary treatment, and that he has a close bond with L.B.

¶40       To determine whether severance is in the best interests of a child, the court balances the parent's rights against the child's rights. *Kent K.*, 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021. Termination of the parent–child relationship is in the child's best interests if the child would be harmed if the relationship continues or would benefit from termination. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19, 83 P.3d at 50. Factors to consider include (1) whether an adoptive placement is immediately available, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998), (2) whether the current placement is meeting the child's needs, *id.*, and (3) whether the child is adoptable. *See Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

¶41       The juvenile court found that L.B.'s placement with a relative was meeting L.B.'s special needs, and that L.B. is happy and has bonded with the relative, who is willing to adopt him. The juvenile court further found that L.B. "needs to be in a safe, stable, and loving environment" and that [n]either parent can provide same at this time, or in the foreseeable future."

¶42       The evidence supports the juvenile court's finding that termination of Father's parental rights is in L.B.'s best interests. The ADES case manager testified that L.B.'s placement with relatives provided a loving and caring environment, and that L.B. appeared to be happy and to have bonded with his foster parents. The current placement is also meeting L.B.'s special needs as he is receiving occupational/speech therapy and attending a developmental preschool. L.B. is adoptable, and L.B.'s foster parents are willing to adopt him, which demonstrates an affirmative benefit to L.B. from severance of Father's parental rights. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004).

¶43       Although Father argues that termination of his parental rights is premature, we conclude otherwise. *See Maricopa County Juv.*

*Action No. JS-501568*, 177 Ariz. 571, 577, 869 P.2d 1224, 1230 (App. 1994) ("Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests."). By the time of the severance hearing, Father had not demonstrated sobriety, and he acknowledged that he was not in a "stable place" where he could parent L.B.

¶44 Because severance of Father's parental rights will allow L.B. to benefit from adoption in a stable and loving home where his special needs are met, the juvenile court did not abuse its discretion by finding that severance is in L.B.'s best interests. *See James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App. 1998).

## CONCLUSION

¶45 For the foregoing reasons, we affirm the juvenile court's termination of Father's and Mother's parental rights to L.B.



Ruth A. Willingham · Clerk of the Court
FILED: gsh